THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JULIÁN CRUZ MARTÍNEZ, k/a JULIO TORRES, Defendant and Appellant.

No. CR-65-75.    Decided October 13, 1965.

*Nicanor Vázquez Torres* for appellant. *Rodolfo Cruz Contreras, Acting Solicitor General,* and *Elpidio Arcaya, Assistant Solicitor General,* for The People.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Appellant was convicted of having three gallons and a pint of clandestine rum in his house in violation of the Spirits and Alcoholic Beverages Act, 13 L.P.R.A. § 1754. He was sentenced to pay a $100 fine or in default thereof to serve 90 days in jail.

He assigns three errors. We shall discuss them in the same order assigned. His first assignment is the following: "The trial court erred in dismissing the Motion for Suppression of Evidence introduced by defendant-appellant."

The search warrant has a typographical error and appellant thinks that it renders it void. We do not agree. Let us see.

Appellant lives, or lived at the time of the occurrence, in the Tejas Ward of the municipality of Las Piedras. The affidavit of Roberto López Torres which supported the issuance of the search warrant refers correctly to the Tejas Ward of Las Piedras. The search warrant itself states correctly that: "Evidence having been introduced this day by means of the sworn statement signed by Roberto López Torres showing that John Doe known as Julio Torres is a resident of the TEJAS WARD, LAS PIEDRAS, PUERTO RICO in a house which is described as follows: "(here a detailed description of the house in question is made). (The capital letters appear in the original.)

■■ It is thereafter, in filling out the search warrant in which a summary or synthesis of the affidavit of Roberto López Torres is made that the error of copying Tejas Ward, Yabucoa, is committed. Nevertheless it appears clear from the warrant, as we have seen, that it was intended to search the house described therein and that the latter is located in

the Tejas Ward of Las Piedras. The Internal Revenue agents did not have any discretion regarding the house to be searched. They could only search the house specifically described in the search warrant and which is located in the Tejas Ward of Las Piedras. If the search warrant had conferred any discretion to the Internal Revenue agents to search one of two or of several houses without having their description in the search warrant, such discretion would have made the warrant null and void. On the contrary, the absence of such discretion in the warrant in this case makes it valid.

■ The error in the summary of the affidavit did not affect the authority granted by the search warrant, inasmuch as both the search warrant and the affidavit clearly designate the location of the house to be searched. The document which serves as a ground to issue the search warrant is the sworn statement and not the summary thereof which is made afterwards. An error in the summary does not render incorrect either the sworn statement or the warrant. Where the record contains, as it does, the original of the affidavit of Roberto López Torres, no other document represents better evidence of its contents. 32 L.P.R.A. § 1667.

The information, document which in chronological order follows the affidavit and the search warrant, also states that the offense was committed in "the municipality of Las Piedras."

The typographical error hereinbefore mentioned in no way prejudiced the defendant.

■ The second error assigned attacks the sufficiency of the evidence. It lacks merit. The evidence shows that the Internal Revenue agents, Carlos Ortiz Vega and José A. Cordero, who testified at the trial, seized in appellant's house and in his presence, three containers of a gallon each, of clandestine rum. The defense itself stipulated orally at the trial that said gallons and the pint contained clandestine rum. (Tr. Ev. 3, 4, and 8.)

See, for example, the following fragments of the record. Carlos Ortiz Vega, the internal-revenue agent, testified:

WITNESS: "My fellow worker seized three gallons of clandestine rum which is here in evidence today."

PROSECUTING ATTORNEY: "Excuse me, Your Honor, do you want to see it?"

DEFENSE: "We stipulated with the prosecuting attorney that what it contains is clandestine rum." (Tr. Ev. 3.)

.    .    .    .    .    .    .    .

José Antonio Cordero, internal-revenue agent, testifies:

WITNESS: "At that time we proceeded to search the house of this man through a search warrant where we seized three glass containers . . ."

PROSECUTING ATTORNEY: "And where does the man live?"

WITNESS: "In the Tejas Ward of Las Piedras."

PROSECUTING ATTORNEY: "Go on, please."

WITNESS: "Three glass containers of clandestine rum to which the internal-revenue stamps had not been affixed."

PROSECUTING ATTORNEY: "Showing to witness exhibits 1, 2, 3, and 4 of the evidence of The People, do you recognize this evidence? Where was that? Do you stipulate that?"

DEFENSE: "We make the prior stipulation."

WITNESS: "Yes, sir, that is the evidence that was seized."

THE COURT: "Yes."

PROSECUTING ATTORNEY: "Where was it seized?"

WITNESS: "In a closet in a bedroom of the house."

PROSECUTING ATTORNEY: "Whose residence?"

WITNESS: "That of Julio Cruz Martínez known as Julio Torres." (Tr. Ev. 7–8.)

Julián Cruz Martínez, known as Julio Torres, maintained that they did not seize any rum whatsoever in his house; that he did not see any internal-revenue agents there; that he was not arrested; that he was not taken before the justice of the peace of Las Piedras or to any other place; that

bail of $500 was not fixed; that he is called Julio Torres and that he is also called Julián Cruz Martínez.

Apparently the defendant tried to create doubt about his identity seeking an acquittal. The evidence of the People was considerably more abundant and plausible than that of defendant and the conflict therein was settled by the trial judge. Nothing in the record justifies our disturbing the court's weighing.

■ The third error is not valid either. It charges the trial judge with improper intervention during the proceeding. We have read the transcript of the evidence and we are convinced that there is no merit in this assignment. The record shows that the whole proceeding was conducted with praiseworthy circumspection by all parties involved.

The judgment rendered in this case by the Superior Court, Humacao Part, on November 30, 1964 shall be affirmed.